UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEON SMITH,

                Plaintiff,

v.                                                                          9:09-CV-0554
                                                                            (GTS/GHL)
MICHAEL HOGAN, DONALD SAWYER,
TERRI MAXYMILLIAN, JEFF NOWICKI,
CHARMAINE BILL, LINDA KOVICH,
ANTHONY GORZALAZ, JAMES MORGAN,

                Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

LEON SMITH, #248893
Plaintiff *pro se*
CNYPC
P.O. Box 300
Marcy, NY 13403

HON. ERIC T. SCHNEIDERMAN                       DAVID L. COCHRAN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION and ORDER</u>

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules

of Practice for this Court.  Plaintiff alleges that Defendants violated his constitutional rights by

strip searching him, supervising his use of the bathroom, denying him a snack, placing him in

isolation for two days, failing to provide him with medication, searching his cell and confiscating items, changing his custody status, and causing him to miss a deadline to file a motion in state court.  (Dkt. No. 1.)  Currently pending is Defendants' motion for summary judgment.  (Dkt. No. 44.)  Plaintiff has not opposed the motion, despite having been advised of the consequences of failing to do so and  having been granted an extension of the deadline by which to do so.  (Dkt. No. 44-1; Jan 24, 2011 Text Ord.)  For the reasons that follow, I recommend that Defendants' motion for summary judgment be granted.

## I.      BACKGROUND

At the time of the incident at issue in this case, Plaintiff was civilly committed to the Central New York Psychiatric Center ("CNYPC").  The complaint alleges that at 12:30 p.m. on February 3, 2009, Plaintiff and the other residents of his ward were in the dining room finishing lunch.  (Dkt. No. 1 at 5.[1])  Defendant Terri Maxymillian, the director of the facility's Sex Offender Treatment Program, came into the dining room and told the residents that they were going to be strip searched and that their rooms would be searched because "somebody told her about some drugs."  (Dkt. No. 44-3 at 14:3-21.[2])  Defendant Jeff Nowicki, the head of security, was also present.  (Dkt. No. 44-3 at 28:22-30:24.)  They told the residents that they would not be allowed to return to the day room until they consented to being escorted one by one to a side room to be strip searched.  (Dkt. No. 1 at 5.)  Plaintiff and five other residents refused to consent.

---

[1]        Page references in citations to the complaint refer to the page numbers assigned by the Court's electronic filing system.

[2]        Page references in citations to Plaintiff's deposition refer to the page numbers on the original document rather than the page numbers assigned by the Court's electronic filing system.

2

*Id*.

About five minutes later, the residents in the dining room began looking at the door

toward two staff members named Jerome Allen and Kim Clark, who are not named defendants.

(Dkt. No. 1 at 5.)  When Plaintiff got up to see what everyone was looking at, Mr. Allen shook

his hand in Plaintiff's face and said "You know I don't like you . . .  so I don't know why you

come to the door."  *Id.* at 5-6.  Ms. Clark told Plaintiff that staff members do not "go against"

each other.  *Id*. at 6.  Another staff member named Robert Taylor, who is also not named as a

defendant, approached and Ms. Clark "told him something about" Plaintiff.  *Id*.  Mr. Taylor then

came into the dining room and stood there.  *Id*.

At 2:30 p.m., several of the residents asked if they could be pat-frisked and drug-tested

rather than strip searched.  (Dkt. No. 1 at 7.)  The complaint alleges that Defendants Maxymillian

and Charmaine Bill (a treatment team leader) denied the request.  *Id.*  During the time that the

residents were kept in the dining room, they were not allowed to make phone calls, were only

allowed to use the bathroom if they were supervised by two staff members, and were not given

their 5:00 p.m. medication or their 7:30 p.m. snacks.  *Id*.

At approximately 8:25 p.m., Plaintiff and the other five residents were brought to the

hallway near the nurses' station.  (Dkt. No. 1 at 7.)  There, Defendant Bill told them that they

were going to each be placed in an isolation room instead of their ward rooms unless they agreed

to be strip searched.  *Id*.  Plaintiff was not allowed to return to his room for the next two days.

(Dkt. No. 44-3 at 27:4-8.)

At some point while Plaintiff was detained in the dining room or in isolation, his room

was searched.  Plaintiff does not know who searched his room, but testified that the search was

ordered by Defendant Maxymillian.  *Id*. at 13:21-14:2.  Plaintiff was not present when his room

was searched.  *Id*. at 15:15-17.  A straw and tissue were confiscated.  *Id*. at 15:18-21.  Plaintiff

testified that someone told him that Defendant Linda Kovich took some other things out of the

room during the search.  *Id*. at 32:2-20.  Plaintiff does not remember what things were taken.  *Id*.

at 35:9-36:25.

On February 4, 2009, Plaintiff woke up between 7:30 a.m. and 7:45 a.m. and "waited for

[his] morning meds to be delivered."  (Dkt. No. 1 at 8.)  Plaintiff never received his morning

medication.  (Dkt. No. 44-3 at 10:20-24.)  At 8:00 a.m. breakfast was delivered and Plaintiff

refused his meal.  (Dkt. No. 1 at 8.)  He asked to use the bathroom and make a legal call, but the

request was refused.  *Id*.

At 9:00 a.m., Plaintiff was "finally allowed to go to bathroom to do morning hygiene."

*Id*.  Robert Taylor escorted Plaintiff to the bathroom.  *Id*. at 9.  Mr. Taylor asked Plaintiff if he

needed anything from his room.  *Id*.  Plaintiff requested a toothbrush, toothpaste, and

underclothes, which Mr. Taylor brought to him.  *Id*.

After Plaintiff washed up, he "got the S.C.T.A. to call the nurses [so] I can get this strip[]

search[] over with cause I'm sick [and] tired of being treat[ed] like I'm in some prison all over

again[] and being punish[ed] like I'm a prison[er]."[3]  *Id*.  Mr. Taylor and another male staff

member performed the strip search by asking Plaintiff to remove his clothes, bend over, and

spread his buttocks.  (*Id*.; Dkt. No. 44-3 at 19:21-20:3.)  Plaintiff told them that, as a Muslim, he

---

[3]        Although the complaint alleges that the strip search occurred on February 4,
Plaintiff testified at his deposition that he was strip searched on February 3.  (Dkt. No. 44-3 at
10:14-16.)  From the context, it seems clear that the search occurred on February 4, the day after
Plaintiff initially refused to be searched.

did not "feel right bending over for anyone who [was] not trained medical personnel or nurses."
(Dkt. No. 1 at 9.)  Nonetheless, he complied.  *Id*.  The search took ten or fifteen minutes.  (Dkt.
No. 44-3 at 20:9-10.)  Plaintiff asserts that he was "violate[d] as Muslim by Director Donald
Sawyer, Dr. Terri Maxymillian who order[ed] the strip[] search[] and Mr. Jeff Nowicki Assistant
and Ms. Charmaine Bill and Mr. James Morgan . . . who [was] standing in the door way looking
in, and Mr. Steve Reiling[4] R..N. who [was] at the door looking in."  (Dkt. No. 1 at 9.)  At his
deposition, Plaintiff testified that Defendant Anthony Gorzalaz, a doctor, was also standing
outside the room where Plaintiff was strip searched.  (Dkt. No. 44-3 at 37:5-13.)  Plaintiff
believes that, as a civilian rather than a prisoner, he should not have been strip-searched that way.
*Id*. at 16:3-6.  He also believes that a Muslim should not be searched by non-Muslims.  *Id*. at
22:13-17.  Plaintiff testified that in correctional facilities in New York, Muslims are allowed to
keep their underwear on during strip searches.  *Id*. at 21:18-25.

Later that day, Plaintiff's primary therapist, Ms. Keshia Barron[5], told him that he had
been "moved back to MOD status."  (Dkt. No. 1 at 8.)  No reason was given for this decision.  *Id*.
Plaintiff informed his lawyer and told her that he could not "participate in groups because of said
demotion of status."  *Id*.  Plaintiff also learned that residents who had agreed to be strip searched
"were moved off the MOD ward to regular wards as a reward for being searched."  *Id*.  Plaintiff
believes this demotion was a "deliberate act of punishment by the staff of CNYPC - SOTP for

---

[4]     At his deposition, Plaintiff testified that he intended to name Mr. Reiling as a
defendant, but that he "forgot to finish, to put his name on top of it.  I had it on only a piece of
paper.  I forgot to put it on there."  (Dkt. No. 44-3 at 12:15-13:10.)

[5]     Plaintiff testified at his deposition that Keshia Barron is a defendant in this case.
(Dkt. No. 44-3 at 13:14-20.)  However, she is not listed in the caption of the complaint or the
complaint's list of parties.  (Dkt. No. 1 at 1-3.)

no[t] willingly agreeing to participate in the . . . strip search . . . ." *Id.*

Plaintiff received his medication in the evening on February 4, 2009.  (Dkt. No. 44-3 at 23:13-20.)

Plaintiff asserts that the strip search, cell search, and demotion in status violated the OMH Official Policy Manual and the CNYPC-SOTP Residents Manual.  (Dkt. No. 1 at 10.)  Specifically, Plaintiff asserts that the search violated (1) page three of the Residents' Manual, which states that all residents will be treated respectfully and that SOTP maintains a non-judgmental and non-punitive therapeutic atmosphere; and (2) the OMH Official Policy regarding patient searches, which states that strip searches will only be conducted when less intrusive measures have been considered or attempted, that one of the staff members present must be a member of the clinical staff, that the searchers be the same gender as the patient, that searches must be conducted with respect for the patient's dignity and, where possible and appropriate, only after attempting to resolve a patient's concerns about the search; and (3) the OMH Official Policy regarding room searches.  *Id.* at 10-14.

Plaintiff missed the deadline to file a 440 motion in state court because he was not allowed to call his lawyer and because he was placed in isolation for two days.  (Dkt. No. 44-3 at 17:12-15; 28:9-13.)  Plaintiff asked for an extension, which was granted, and he was ultimately able to file his 440 motion.  *Id.* at 28:14-21.

A few days later, Plaintiff filed a complaint against Mr. Allen, who had shaken his hand in Plaintiff's face in the dining room.  (Dkt. No. 1 at 6.)  An unnamed risk management employee told Mr. Allen "do not worry about the [complaint] against him cause you are not going [no]where."  *Id.*  Mr. Allen told Plaintiff "you know I had to cover my ass" and smiled.  *Id.*

## II.    APPLICABLE LEGAL STANDARDS

### A.    Legal Standard Governing Unopposed Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

movant shows that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment

bears the initial burden of showing, through the production of admissible evidence, that no

genuine issue of material fact exists.  Only after the moving party has met this burden is the

nonmoving party required to produce evidence demonstrating that genuine issues of material fact

exist.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  The nonmoving party must do

more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that

there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp*., 475 U.S. 574, 585-86 (1986).  Rather, a dispute regarding a material fact is *genuine*

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine

issue of material[6] fact exists, the Court must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d

290, 309 (2d Cir. 2008).

When a plaintiff fails to respond to a defendant's motion for summary judgment, "[t]he

fact that there has been no [such] response . . . does not . . . mean that the motion is to be granted

automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, practically

---

[6]    A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson*, 477 U.S. at 248.

speaking, the Court must (1) determine what material facts, if any, are *disputed* in the record

presented on the defendants' motion, and (2) assure itself that, based on the *undisputed* material

facts, the law indeed warrants judgment for the defendants.  *See Champion*, 76 F.3d at 486; *Allen*

*v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001); N.D.N.Y.

L.R. 7.1(b)(3).

Where a plaintiff has failed to properly respond to a defendant's Statement of Material

Facts (its "Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted

as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the

non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential

consequences of failing to respond to the movant's motion for summary judgment.  *See*

N.D.N.Y. L.R. 7.1(a)(3); *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241,

244 (2d Cir. 2004); *Champion*, 76 F.3d at 486.

### B.      Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of

Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion

is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure

to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise Gen.*

*Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128

F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56

summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or

without notice to the parties.").  Accordingly, it is appropriate to summarize the legal standard

governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

III.    ANALYSIS

    A.    Claims Regarding the Strip Search

    Plaintiff essentially makes three claims regarding the strip search: (1) that Defendants Maxymillian and Nowicki should not have entered the dining hall and ordered that the residents there be strip-searched; (2) that Defendants Maxymillian and Bill should have accepted the residents' request to be pat-frisked and drug-tested rather than strip searched; and (3) that the search itself violated Plaintiff's rights in a number of ways.   I will address each of these claims separately.

        1.    Initial Order

    Read broadly, the complaint may allege that Defendants Maxymillian and Nowicki violated Plaintiff's constitutional rights by entering the dining hall and requesting that the residents there submit to a strip search.  Defendants have not addressed this claim.  I find that the claim is subject to *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2) because "[t]he mere act of requesting that a person submit to a search does not, in and of itself, run afoul of the Fourth Amendment . . ."  *Groves v. New York*, No. 9:09-CV-0412 (GLS/DEP), 2010 U.S. Dist. LEXIS 29722, at *16, 2010 WL 1257858, at * 5 (N.D.N.Y. Mar. 1, 2010) (dismissing another resident's claim arising from the same incident of which Plaintiff complains).[7]  Therefore, I recommend that the Court dismiss this claim.

        2.    Denial of Proposed Alternative

    Read broadly, the complaint may allege that Defendants Maxymillian and Bill violated

_____

        [7]    The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Plaintiff's rights by refusing to allow the residents to be pat-frisked and drug-tested rather than strip-searched. (Dkt. No. 1 at 7.) Specifically, Plaintiff may be arguing that Defendants Maxymillian and Bill violated OMH official policy by refusing to attempt less intrusive measures before strip searching the residents. *Id*. at 11. Defendants have not addressed this claim. These allegations do not state a federal cause of action because a "violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (collecting cases). Therefore, I recommend that the Court dismiss Plaintiff's claims.

3.   Claims Regarding Manner in Which the Strip Search Was Conducted

Plaintiff asserts several objections to the manner in which the strip search was ultimately conducted. First, Plaintiff contends that the manner in which the strip search was conducted violated his beliefs as a Muslim (Dkt. No. 1 at 9; Dkt. No. 44-3 at 22:13-17) and that the search should have been conducted differently because he is a civilian rather than a prisoner. (Dkt. No. 44-3 at 16:3-6.) Second, Plaintiff objects to the fact that several people stood outside the doorway looking in while he was searched. (Dkt. No. 1 at 9; Dkt. No. 44-3 at 37:5-13.) Third, read very broadly, Plaintiff may be alleging that Mr. Taylor conducted the search in order to retaliate against Plaintiff for the incident in the dining room involving himself, Jerome Allen, and Kim Clark. (Dkt. No. 1 at 5-6.) Defendants argue that any claim regarding the manner in which the strip search was conducted must be dismissed because Plaintiff has not named anyone as a defendant who conducted the search. (Dkt. No. 44-5 at 6.[8]) Defendants are correct.

---

[8]     Page references in citations to Defendants' memorandum of law refer to the page numbers on the original document rather than the page numbers assigned by the Court's electronic filing system.

Plaintiff has not alleged, and the evidence does not show, that any named defendant either conducted the search or ordered that it be conducted in the manner of which Plaintiff complains. Mr. Taylor and the unnamed staff member who actually conducted the search are not named defendants.  Under Second Circuit precedent, "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the

violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[9]  Here, there is no evidence that any of the *Colon* categories applies to any named defendant.[10]  Therefore, I recommend that the Court dismiss Plaintiff's claims regarding the manner in which the strip search was conducted.

Plaintiff's failure-to-intervene claim against the officials who were standing at the door while the search was conducted is also subject to dismissal.  Under the Due Process Clause, applicable to non-prisoners such as Plaintiff, the failure of a state official to intervene to prevent harm is a constitutional violation where the official acts with deliberate indifference to a substantial risk of serious harm.  *Rosen v. City of New York*, 667 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2009).  An official displays deliberate indifference "when he has adequate time to assess a serious threat against an [individual] and a fair opportunity to protect the [individual] without risk to himself, yet fails to intervene."  *Id*. at 360.  A "serious threat" is an "unquestioned and serious deprivation of basic human needs."  *Id*. (punctuation omitted).  Here, there is no evidence that Plaintiff was subjected to any unquestioned and serious deprivation of basic human

---

[9]        In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies.  The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories.  Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories.  *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases).  I will assume for the purposes of this motion that *Colon* remains good law.

[10]        Plaintiff testified that Terri Maxymillian said that the cell search and strip search were "authorized by the superintendent and Donald Sawyer was the superintendent."  *Id*. at 25:18-23.  However, there is no evidence that Defendant Sawyer issued any order regarding the manner in which the search was to be conducted or that he was aware of Plaintiff's religious beliefs.

needs.  Therefore, I recommend that the Court dismiss Plaintiff's failure-to-intervene claims regarding the strip search.

Finally, to the extent that Plaintiff claims that Mr. Taylor conducted the strip search to retaliate against Plaintiff for the earlier incident in the dining room, the claim fails because Mr. Taylor is not a named defendant.  Therefore, I recommend that the Court dismiss Plaintiff's claims regarding the strip search.

### B.      Claims Regarding the Incident with Non-Defendants Allen, Clark, and Taylor

Plaintiff's complaint includes allegations about an incident in the dining room with non-defendants Jerome Allen, Kim Clark, and Robert Taylor.  (Dkt. No. 1 at 5-6.)  Defendants do not directly address these allegations.  I recommend that the Court *sua sponte* dismiss the claim for failure to allege personal involvement by any named defendant.

### C.      Claims Regarding Restrictions on Bathroom Use, Failure to Provide Snacks, and Placement in Isolation

Plaintiff alleges that he was supervised in the bathroom during the time he and the five other residents were confined to the dining room, that he was not given his 7:30 p.m. snack on February 3, and that he was placed in isolation for two days.  *Id*. at 7-8.  I construe these claims as alleging that Defendants subjected Plaintiff to unconstitutional conditions of confinement. Defendants have not addressed these claims.

Because Plaintiff was civilly committed at the time of the incident, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.  *Groves*, 2010 WL 1257858, at * 6.  However, the same standard applies. *See Caiozzo v. Koreman*, 581 F.3d 63, 66 (2d Cir. 2009) (applying standard from Eighth

14

Amendment jurisprudence to pretrial detainee's due process claims regarding medical care).

Such claims have both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S.

825, 834 (1994). To satisfy the objective component, "the deprivation alleged must be,

objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To

prove the objective component of a conditions-of-confinement claim, a prisoner must show that

the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of

life's necessities." *Farmer*, 511 U.S. at 834. Therefore, "extreme deprivations are required to

make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

     Here, there is no evidence from which a reasonable juror could conclude that Plaintiff

was deprived of the minimal civilized measure of life's necessities. Regarding the allegation that

Plaintiff was supervised in the bathroom, "[h]owever embarrassing this incident might have been

to the plaintiff, it does not rise to the level of a constitutional violation." *Groves*, 2010 WL

1257858, at *8. Similarly, the denial of one snack is not a constitutional violation. *Gill v.

Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (finding that complaint failed to state

Eighth Amendment claim where prisoner alleged he was denied one meal). Finally, Plaintiff did

not plead any facts in his complaint or testify to any facts at his deposition from which a

reasonable juror could conclude that Plaintiff was subjected to extreme deprivations during his

two days in isolation. Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's

conditions-of-confinement claims.

    **D.**    **Medical Care**

     Plaintiff alleges that he was not given his 5:00 medication on February 3 or his morning

medication on February 4. (Dkt. No. 1 at 7; Dkt. No. 44-3 at 10:20-24.) Defendants have not

addressed this claim.

As with Plaintiff's conditions-of-confinement claims, the allegations regarding the denial of medication are analyzed under the Due Process Clause of the Fourteenth Amendment, which uses the same test as Eighth Amendment medical claims. *Caiozzo*, 581 F.3d at 66. There are two elements to a plaintiff's claim that officials violated his right to receive medical care: "[t]he plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Id.* at 72 (citation and punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant . . . acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted), *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702-03.

Here, Plaintiff has not pleaded, and the evidence does not show, that he suffered from any serious medical condition. Neither the complaint nor Plaintiff's deposition reveal what medication Plaintiff was taking, what condition the medication was supposed to treat, or any

adverse effects that Plaintiff suffered as a result of missing two doses.  Therefore, I recommend

that the Court *sua sponte* dismiss Plaintiff's claim regarding the denial of medication.

### E.      Claims Regarding Search of Plaintiff's Room

Plaintiff alleges that Defendant Maxymillian authorized Defendant Linda Kovich and

other unnamed staff members to search his cell.  (Dkt. No. 44-3 at 13:21-14:2, 32:2-20.)

Plaintiff alleges that the search violated OMH and CNYPC policies and that Defendant Kovich

took some items out of the room during the search.  (Dkt. No. 1 at 12-13; Dkt. No. 44-3 at 32:2-

20.)

Defendants argue that Plaintiff cannot state a constitutional claim regarding the alleged

loss of property in the room search.  (Dkt. No. 44-5 at 3.)  Defendants are correct.  "[A]n

unauthorized intentional deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,*

468 U.S. 517, 533 (1984) (emphasis omitted).  This Circuit has held that "confiscation . . . [does]

not constitute a Fourteenth Amendment violation for loss of property because of the availability

of state court post-deprivation remedies" in the New York Court of Claims.  *Koehl v. Dalsheim,*

85 F.3d 86, 88 (2d Cir. 1996); *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir. 2001); *see also Parratt*

*v. Taylor,* 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the

respondent with all the relief which may have been available if he could have proceeded under §

1983, that does not mean that the state remedies are not adequate to satisfy the requirements of

due process."), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).

Therefore, I recommend that the Court dismiss Plaintiff's claim regarding the loss of property.

As discussed above, to the extent that Plaintiff claims that the search violated his constitutional rights because it did not comply with OMH and CNYPC policies, the complaint fails to state a federal claim.  Therefore, I recommend that the Court dismiss Plaintiff's claim that the search did not comply with OMH and CNYPC policies.

Finally, construed liberally, Plaintiff may be alleging that Defendants Maxymillian and Kovich violated his Fourth Amendment rights by searching his room.  Defendants have not addressed this claim.   At least one court in this Circuit has held that, due to the security concerns that locked psychiatric facilities share with prisons and jails, involuntarily committed individuals do not have a right to privacy in their rooms and thus cannot assert Fourth Amendment claims regarding room searches.  *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 U.S. Dist. LEXIS 48753, at *21-24, 2008 WL 2543573, at *7-8 (S.D.N.Y. June 25, 2008).[11]  I find the reasoning of *Lombardo* persuasive and agree with its holding.  Therefore, I recommend that the Court dismiss Plaintiff's Fourth Amendment claim regarding the search of his room.

**F.      Claim Regarding Change in Status**

Plaintiff claims that as a result of his failure to immediately consent to a strip search, he was "moved back to MOD status."  (Dkt. No. 1 at 8.)  Defendants do not directly address this claim, although it may be implicitly included in their argument that Plaintiff has not stated a retaliation claim.  (Dkt. No. 44-5 at 5-6.)  I liberally construe the complaint as asserting a retaliation claim and a procedural due process claim regarding the change in Plaintiff's status.

---

[11]      The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

1.     Retalation

Claims of retaliation find their roots in the First Amendment.  *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).  Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights.  *See Gill*, 389 F.3d at 381-383.  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted:

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v.*

*Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

Here, there is simply no evidence that any named defendant was involved in the decision to place Plaintiff on MOD status. Plaintiff alleges that Ms. Keshia Barron, whom Plaintiff characterizes as a defendant but is not named as such in the complaint, was the person who told him that he had been placed on MOD status. (Dkt. No. 1 at 8; Dkt. No. 44-3 at 13:14-20.) However, Plaintiff does not allege in his complaint and did not testify at his deposition that Ms. Barron actually made the decision. Accordingly, even if one assumes that Plaintiff was engaged in protected conduct and that the change in status constituted adverse action, there is no evidence that any named defendant took adverse action against Plaintiff. Therefore, I recommend that the Court dismiss this claim.

       2.   <u>Due Process</u>

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty or property interest without due process of law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). I can find no authority suggesting that Plaintiff has either a liberty or a property interest in being assigned to any particular status at CNYPC. *See Groves*, 2010 WL 1257858, at *8-10 (dismissing due process claim regarding change to MOD status arising from same incident of which Plaintiff complains). Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's due process claim regarding the change to MOD status.

     **G.**    **Claims Regarding Plaintiff's Late 440 Motion**

Plaintiff claims that Defendants Bill and Maxymillian prevented him from accessing his

legal work.  (Dkt. No. 44-3 at 31:13-24.)  Defendants argue that Plaintiff cannot prevail on his claim regarding access to the courts because there is no evidence that he suffered any injury.  (Dkt. No. 44-5 at 4-5.)  Defendants are correct.  To state a claim for denial of access to the courts, a plaintiff must demonstrate both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946 (N.D.N.Y. 1994) (Hurd, M.J.).  Here, Plaintiff suffered no actual injury because he was able to obtain an extension of time to file his 440 motion.  (Dkt. No. 44-3 at 28:14-21.)  Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's access-to-the-courts claim.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' unopposed motion for summary judgment (Dkt. No. 44) be **GRANTED** and judgment be entered in favor of Defendants; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Groves v. New York*, No. 9:09-CV-0412 (GLS/DEP), 2010 U.S. Dist. LEXIS 29722, 2010 WL 1257858 (N.D.N.Y. March 1, 2010); and *Lombardo v. Holanchock*, No. 07 Civ. 8674, 2008 U.S. Dist. LEXIS 48753, 2008 WL 2543573 (S.D.N.Y. June 25, 2008) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.


Dated: July 29, 2011
      Syracuse, New York

George H. Lowe
United States Magistrate Judge